IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| NICHOLAS MOELLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 6:25-cv-03031-MDH |
| ) | |
| NEW PRIME INC., d/b/a/ PRIME, INC. ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court is Defendant New Prime Inc's Motion to Dismiss Case or Stay Proceedings and Compel Arbitration (Doc. 4). Defendant has filed its suggestions in support, Plaintiff has filed his suggestions in opposition (Doc. 6) and Defendant has filed a reply (Doc. 7). The motion is now ripe for adjudication on the merits. For the reasons stated herein, Defendant's Motion to Stay Proceedings is **GRANTED**.

## BACKGROUND

This case arises from an allegation of retaliation in violation of the Surface Transportation Assistance Act ("STAA"). Plaintiff is a resident of Sioux Falls, South Dakota. Defendant is a general for-profit business with its principal office in Springfield, Missouri.

On or around April 5, 2024, Plaintiff began training with the Defendant. Plaintiff alleges during training he identified and reported a safety issue concerning vehicle malfunctions and warnings, which directly impacted the safety of operations under federal transportation laws. Plaintiff alleges he reported these concerns to his trainer who instructed the Plaintiff to continue driving and refused to allow the Plaintiff to address and resolve the safety issue at the next available stop. Plaintiff alleges it was reported to his driver leader and an associate on May 7, 2024, the day

1

of Plaintiff's termination. Plaintiff alleges he reiterated his concerns to the head of security during the termination meeting. Plaintiff alleges he was abruptly terminated by Defendant under false pretenses of violating its no-firearms policy, despite the Defendant having been aware of Plaintiff's possession of a firearm prior to the incident.

Defendant brings this current motion stating as part of Plaintiff's employment with Defendant, he signed an Arbitration Agreement on March 13, 2024, mandating Plaintiff arbitrate any and all disputes arising out of or relating to the parties' relationship … and the termination of the parties' relationship. Defendant argues it applies to any and disputes between the parties whether arising under federal, state, local, or common law. Defendant asks the Court to either dismiss Plaintiff's Complaint and/or to stay the proceedings and compel Plaintiff to submit his claims to arbitration.

**STANDARD**

A party who has not agreed to arbitrate a dispute cannot be forced to do so. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). The validity of an arbitration agreement is determined by reference to state law. *See Perry v. Thomas*, 482 U.S. 483, 493–94 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). As the governing law of the Arbitration Agreement is governed by the Missouri Uniform Arbitration Act, Missouri law controls the validity of Defendant's Arbitration Agreement. Under Missouri law, the Court must engage in a three-step process, deciding: 1) whether a valid contract exists; 2) whether the specific dispute falls within the scope of the arbitration agreement; and 3) the court must determine if the agreement is subject to revocation based upon contract principles, such as whether it is procedurally or substantively unconscionable. *Whitworth v. McBride & Son Homes, Inc.*, 344 S.W.3d 730, 736 (Mo. App. W.D. 2011), citing *Nitro Distributing, Inc. v. Dunn*, 194

S.W.3d 339, 345 (Mo. banc 2006). "Whether an arbitration agreement is valid is a matter of state contract law." *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004).

## ANALYSIS

Defendant argues as part of his employment Plaintiff signed an Arbitration Agreement, agreeing to, among other things arbitrate such claims like the current action. Plaintiff argues that this case should remain in federal court because: 1) no valid contract was formed; 2) Plaintiff has a non-waivable federal right under STAA; 3) Missouri's pro-arbitration policy does not override federal protections; 4) he did not knowingly or voluntarily waive his rights; and 5) the Arbitration agreement is substantively unconscionable and overly broad. (Doc. 6, pages 1–2). The Court will take each argument in turn.

**I.     Contract Formation**

Plaintiff argues that he was not an employee on March 13, 2024, the date the Arbitration Agreement was signed, and that the arbitration agreement was not supported by any consideration. (Doc. 6, page 2). Defendant argues that the timing of his employment relating to Plaintiff signing the Arbitration Agreement is completely irrelevant when consideration arises out of or is comprised of the mutual obligation and agreement to arbitrate. (Doc. 7, page 2). Defendant further argues that the parties mutual promise to arbitrate claims per the agreement is sufficient consideration for a valid contract. *Id*.

In Missouri, legal consideration is essential for the formation of any contract, including one for arbitration. *Kunzie v. Jack-In-The-Box, Inc.*, 330 S.W.3d 476 (Mo. App. E.D. 2010). Consideration is created by "either a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party." *Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 25 (Mo. App. W.D. 2008).

Here, the Arbitration Agreement explicitly states:

> YOU and New Prime Inc. d/b/a Prime, Inc. ("PRIME") mutually agree to resolve any and all disputes between them—including but not limited to any and all disputes arising out of or relating to . . . the termination of the parties' relationship––through final binding and individual arbitration instead of through a lawsuit.

(Doc. 4-2, Page 2). Plaintiff promised to resolve any disputes arising out of or relating to the termination of the parties' relationship through binding arbitration. Defendant also made the same promise to resolve any disputes arising out of or relating to the termination of the parties' relationship through arbitration. The mutual promise to resolve disputes through arbitration is considered sufficient consideration. The Court therefore finds that the Arbitration Agreement was supported by consideration and thus a valid contract exists.

## II. Scope of the Arbitration Agreement

The terms of the Arbitration Agreement state that the parties "mutually agree to resolve any and all disputes between them … including … the termination of the parties' relationship … through final binding and individual arbitration instead of through a lawsuit in court." (Doc. 4-2, page 2). Plaintiff argues that the STAA and federal protections give him a right to bring his claim in court rather than arbitration and thus brings this issue outside the terms of the Arbitration Agreement. (Doc. 6, page 2).

### a. STAA

Plaintiff argues the STAA gives whistleblowers the right to file a claim in federal court if the Department of Labor has not issued a final decision within 210 days. *Id*. Plaintiff states he exercised this right after the statutory period expired without a decision. *Id*. Plaintiff argues that courts have long held that statutory rights under federal law cannot be waived by pre-dispute arbitration agreements unless Congress has clearly stated otherwise. *Id*. Defendant argues that the Arbitration Agreement does not waive Plaintiff's right under the STAA but mandates that it must

be through arbitration as opposed to the Court. (Doc. 7, page 6). Further, Defendant argues that 49 U.S.C. § 31105(c) does not create a non-waivable statutory right to bring a STAA action in federal court and that this Court has enforced arbitration agreements in actions arising out of similar provisions like Tile VII of the Civil Rights Act. *Id*.

49 U.S.C. § 31105 governs employee protections concerning commercial motor vehicle safety. 49 U.S.C. § 31105(c) specifically states:

> if the Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint and if the delay is not due to the bad faith of the employee, the employee may bring an original action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy, and which action shall, at the request of either party to such action, be tried by the court with a jury.

49 U.S.C. § 31105(c). Resolving disputes via arbitration is in the public interest. *Coleman v. Bristol Care, Inc.*, No. 6:18-CV-04069-MDH, 2018 WL 3848821, at *3 (W.D. Mo. Aug. 13, 2018) (citing *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987)).

Here, 49 U.S.C. § 31105(c) specifically states Plaintiff "*may* bring an original action at law or equity for de novo review in the appropriate district court of the United States." 49 U.S.C. § 31105(c) (emphasis added). Plaintiff is not compelled to bring this action within the district court but may do so at his discretion. However, Plaintiff, as discussed earlier, signed his intent to arbitrate matters through a valid arbitration clause that specifically touches upon the issue he wishes to bring through to the federal district court. Plaintiff, having agreed to resolve this claim in arbitration, has effectively given up his right to federal court review, instead agreeing to settle this issue through arbitration. The Court finds that Plaintiff is to bring his STAA through arbitration. For the reasons stated, the Court finds Plaintiff's STAA claim is within the scope of the Arbitration Agreement.

### b. Federal Protections

5

Plaintiff next argues that while Missouri favors arbitration as a matter of public policy, that preference does not override federal protections for whistleblowers under STAA. (Doc. 6, pages 3–4). Additionally, Plaintiff argues that federal law controls where it offers greater protections, and his right to bring a claim in this Court is expressly granted by Congress under § 31105(c). *Id*. at page 4. Defendant argues that 49 U.S.C. § 31105(c) does not create a non-waivable statutory right to bring a STAA action in federal court and that this Court has enforced arbitration agreements in actions arising out of similar provisions like Tile VII of the Civil Rights Act. (Doc. 7, page 6).

As discussed above, Plaintiff sighed his intent to arbitrate matters through a valid arbitration clause that specifically touches upon the issue he wishes to bring through to the federal district court. Plaintiff, having agreed to resolve this claim in arbitration, the Court finds that Plaintiff is to bring his STAA through arbitration.

### III. Subject to Revocation

Plaintiff argues that the arbitration clause was hidden within a flurry of onboarding forms during a rushed orientation and thus had no opportunity to ask questions or negotiate terms, rendering the agreement procedurally unconscionable. (Doc. 6, page 3). Defendant argues that Plaintiff was warned to read the Arbitration Agreement carefully. (Doc. 7, page 3). Defendant states that the Arbitration Agreement stated it was a binding contract requiring the parties to resolve disputes through final and binding arbitration, that Plaintiff acknowledged he read, understood and agreed to be bound by the Arbitration Agreement and took the time to consider the consequences of his decision. *Id*. at pages 3–4. Defendant states the Arbitration Agreement also stated it was not mandatory and Plaintiff could opt out, including how to opt out and a form to do

6

so attached. *Id*. at page 4. Defendant argues that a party is deemed to have knowledge of the contents of any contract he signs and thus Plaintiff is bound by the Arbitration Agreement. *Id*.

Under Missouri law, a party who signs a document after having an opportunity to review its contents is, absent fraud or duress, bound by its terms. *Williams v. Insomnia Cookies, LLC*, 715 F. Supp. 3d 1205, 1212–13 (E.D. Mo. 2024) (citing *Warren v. Paragon Techs. Grp., Inc.*, 950 S.W.2d 844, 846 (Mo. 1997) (en banc) ("[p]arties are presumed to read what they sign")). A party "may not avoid the consequences of the agreement on the basis that they did not know what they were signing." *Bertocci v. Thoroughbred Ford, Inc.*, 530 S.W.3d 543, 553 (Mo. Ct. App. 2017). "A signer's failure to read and understand a contract is not, without fraud or the signer's lack of capacity to contract, a defense to the contract." *Chochorowski v. Home Depot U.S.A*, 404 S.W.3d 220, 228 (Mo. 2013) (en banc) (citing *Robinson v. Title Lenders, Inc.*, 364 S.W.3d 505, 509 n.4 (Mo. 2012)) (additional citations omitted).

The Court finds that the Arbitration Agreement was not procedurally unconscionable. At the top of the Arbitration Agreement was the following text:

> **PLEASE REIVEW THIS AGREEMENT CAREFULLY. THIS AGREEMENT IS A BINDING CONTRACT THAT REQUIRES THE PARTIES TO RESOLVE DISPUTES N AN INDIVIDUAL BASIS. TO THE FULLEST EXTENT PERMITTED BY LAW THROUGH FINAL AND BINDING ARBITRATION. UNLESS YOU VALIDLY OPT OUT OF ARBITRATION AS PROVIDED BELOW IN SECTION 8. BY SIGNING THIS AGREEMENT BELOW, YOU EXPRESSLY ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTOOD, AND AGREE TO BE BOUND BY, ALL THE TERMS FO THIS AGREEMENT AND HAVE TAKEN THE TIME TO CONSIDER THE CONSEQUENCES OF THAT DECISION.**
>
> **BY SIGNING THE AGREEMENT, YOU ALSO ACKNOWLEDGE THAT YOU HAVE HAD THE OPPORTUNTIY TO REQUEST CHANGES BE MADE TO THE ARBITRATION AGREEMENT. BY WAY OF EXAMPLE, IF YOU WOULD PREFER FOR ANY ARBITRATION TO TAKE PLACE INYOUR STATE OF RESIDENCE RATHER THAN SPRINGIFLED,**

**MISSOURI, PRIME WILL AGREE TO THAT AND WILL REVISE THIS AGREEEMENT ACCORDINGLY.**

(Doc. 4-2, page 2). Although Plaintiff alleges the forms where hidden within a flurry of onboarding forms during a rushed orientation, that does not in itself create a procedurally unconscionable contract. Under Missouri law parties are presumed to read what they sign. A party may not avoid the consequences on the agreement on the basis they did not know what they were signing. For the reasons stated, the Court finds the Arbitration Agreement was not procedurally unconscionable.

Plaintiff next argues that the Arbitration Agreement purports to cover "any and all disputes," including federal statutory rights, without providing clear notice of what rights are being waived. (Doc. 6, page 3). Plaintiff contends that such board and vague language is unenforceable where employees are unaware of the legal consequences. *Id*. Defendant argues an arbitration may be compelled under a broad arbitration clause so long as the underlying factual allegations touch on matters covered by the provisions. (Doc. 7, page 5). Further, Defendant argues that the Arbitration Agreement lists out specific examples including "any and all disputes arising out of or relating to . . . the termination of the parties' relationship." (Doc. 4-2, page 2).

There is a public policy favoring the resolution of disputes via arbitration. *Coleman v. Bristol Care, Inc.*, No. 6:18-CV-04069-MDH, 2018 WL 3848821, at *3 (W.D. Mo. Aug. 13, 2018) (citing *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987)). An arbitration may be compelled under a broad arbitration clause so long as the underlying factual allegations touch on matters covered by the provisions. *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008) (internal citations omitted).

Here, the clause at issue states:

> YOU and New Prime, Inc. d/b/a/ Prime, Inc. ("PRIME") mutually agree to resolve any and all disputes between them—including but not limited to any and all disputes arising out of or relating to the parties' relationship; disputes regarding the

> Training Program Contract; YOUR participation in the Prime Training Program; the TNT Training program; or the Upgrade Orientation program; YOUR work for prime as an employee or independent contractor or otherwise; and *the termination of the parties' relationship*—through final, binding, and individual arbitration instead of through a lawsuit in court.

(Doc. 4-2, page 2) (emphasis added). The underlying factual allegations include the terminations of the parties' relationship, specifically Defendant terminating Plaintiff under alleged false pretenses. The Court finds the underlying factual allegations are touched upon by matters of the Arbitration Agreement provision quoted above. For the reasons stated, the Arbitration Agreement is not substantively unconscionable.

## CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss the Case or Stay Proceedings and Compel Arbitration is **GRANTED**. The Court finds good cause to stay this case with respect to Plaintiff's claims against Defendant until such a time as their resolution in arbitration. Accordingly, Plaintiff and Defendant are **COMPELLED** to submit to arbitration. It is hereby **ORDERED** that Plaintiff will provide the Court with notice upon the resolution of Plaintiff's claims against Defendant in arbitration.

**IT IS SO ORDERED**.

DATED: May 5, 2025            */s/ Douglas Harpool*
                                                  **DOUGLAS HARPOOL**
                                                  **UNITED STATES DISTRICT JUDGE**